**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: |
| ANATOMICAL GIFT ASSOCIATION OF ILLINOIS, INC., and LOREN SANTOW, | ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Hanover Insurance Company ("Hanover") states as follows for its

Complaint for Declaratory Judgment:

**NATURE OF THE ACTION**

1.      This is an insurance coverage dispute.  Anatomical Gift Association of Illinois,

Inc. ("AGA") seeks coverage from Hanover under Nonprofit Entity Advantage Policy No.

LHC-9061690-12 (the "Policy") with respect to a demand letter ("Santow Demand") and

lawsuit filed by Loren Santow ("Santow") against AGA (the "Lawsuit").  (Together, the Santow

Demand and Lawsuit are the "Underlying Claim.")

2.      Through the Underlying Claim, Santow alleges that, after his late mother Elaine

Herman ("Decedent") donated her body to AGA for research purposes, an AGA employee

mishandled Decedent's remains by detaching her severed head and placing it on a co-worker's

desk.

3.      With respect to **Claims** against AGA under the Policy's Directors & Officers and

Entity Liability ("D&O") Coverage Part, which is the only relevant coverage part, exclusions in

the Policy preclude coverage for:

(1) any **Claim** based upon, arising out of or in any way related to the rendering of **Professional Services**, which are defined as services performed for others;

(2) any **Claim** based upon, arising out of or in any way related to the actual or alleged rendering or failure to render **Medical Services**, which are defined in relevant part as handling of or the performance of post-mortem examinations on human bodies;

(3) any **Claim** based upon, arising out of or in any way related to liability on account of a contract or agreement to which an **Insured** is a party;

(4) any **Claim** for emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual.[1]

4.    These four exclusions each independently preclude coverage for the Underlying Claim.

5.    First, because the Underlying Claim is predicated on services for others – *i.e.*, Santow, Decedent, and/or medical schools that AGA partnered with – the Underlying Claim is based upon, arising out of or in any way related to the rendering of **Professional Services**.

6.    Second, because the Underlying Claim is predicated on AGA's handling of or the performance of post-mortem examinations on human bodies, the Underlying Claim is based upon, arising out of or in any way related to the actual or alleged rendering or failure to render **Medical Services**.

7.    Third, because the Underlying Claim is predicated on a written contract between AGA, Santow, and Decedent, the Underlying Claim is based upon, arising out of, or in any way related to liability on account of a contract or agreement to which an **Insured** (AGA) is a party.

8.    Fourth, because the Underlying Claim seeks redress for emotional distress, it is also a **Claim** for emotional distress.

---

[1]    Terms in bold are defined in the Policy.

2

9.　　Accordingly, Hanover owes no duty under the Policy to defend or indemnify AGA, or any other person or entity, in connection with the Underlying Claim.

10.　　Other terms, conditions, and/or exclusions in the Policy also bar or limit coverage for the Underlying Claim.

## PARTIES

11.　　Plaintiff The Hanover Insurance Company is an insurance company organized under the laws of the state of New Hampshire with its principal place of business in Worcester, Massachusetts.

12.　　Defendant Anatomical Gift Association of Illinois, Inc. is a corporation organized under the laws of the state of Illinois with its principal place of business in Chicago, Illinois.

13.　　Defendant Loren Santow is domiciled in Illinois and is therefore a citizen of Illinois. Santow is the plaintiff in the Lawsuit. Santow is named as a Defendant in this action only to the extent that he is required to be named as a necessary party.

## JURISDICTION AND VENUE

14.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 2201, and 2202, as complete diversity exists between the parties, the amount in controversy exceeds $75,000, and Hanover seeks declaratory relief with respect to a case of actual controversy within this Court's jurisdiction.

15.　　Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because the defendants reside in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

## THE HANOVER POLICY

16.     Hanover issued Nonprofit Entity Advantage Policy No. LHC-9061690-12 (the "Policy") to Anatomical Gift Association of Illinois, Inc. for the **Policy Period** of March 7, 2023 to March 7, 2024.  (A true and correct copy of the Policy is attached as Exhibit A.)

17.     The Policy contains a Combined Aggregate Limit of Liability of $1,000,000, which is subject to a $10,000 each **Claim** Retention under the relevant insuring agreement—Insuring Agreement I.C. of the Policy's D&O Coverage Part.

18.     Pursuant to Insuring Agreement I.C. of the D&O Coverage Part, the Policy affords specified coverage for "**Loss** which the **Insured Entity** is legally obligated to pay due to a **Claim** first made against the **Insured Entity** during the **Policy Period**, or the Extended Reporting Period if applicable."

19.     Section II. of Policy's Common Policy Terms and Conditions defines an **Insured Entity** to include the **Named Insured**, which is AGA.

20.     Section III. of the D&O Coverage Part defines a **Claim**, in relevant part as any "[w]ritten demand received by an **Insured** for monetary or non-monetary relief including injunctive relief" or "[c]ivil proceeding commenced by the service of a complaint or similar pleading . . . . against an **Insured Entity** for a **Wrongful Act**, including any appeal therefrom[.]"

21.     Section III. of the D&O Coverage Part defines **Loss** to include "**Defense Expenses**" and specified "amount[s] the **Insured** is legally obligated to pay as a result of a **Claim** . . . ."

22.     Under Endorsement No. 9 to the D&O Coverage Part, **Loss** includes "[v]icariously assessed punitive or exemplary damages or the multiple portion of any multiplied damage award to the extent that such damages are insurable under the laws of the State of

Illinois." However, **Loss** does not include, among other things, "[a]ny amount deemed uninsurable by law."

23.     Directly assessed punitive damages are uninsurable by law.

24.     Coverage under the Policy is also subject to several exclusions.

25.     Pursuant to a Complete Professional Services Exclusion in Endorsement No. 4 to the D&O Coverage Part, the Policy does not apply to **Loss** for any **Claim** "[b]ased upon, arising out of or in any way related to the performance, provision or rendering of **Professional Services**."

26.     Endorsement No. 4 to the D&O Coverage Part provides that "**Professional Services** means any service performed for others whether or not for a fee, consideration or other emolument."

27.     Endorsement No. 1 to the D&O Coverage Part provides that "[t]his insurance does not apply to **Loss** for any **Claim** based upon, arising out of or in any way related to the actual or alleged rendering or failure to render **Medical Services**."

28.     Pursuant to Endorsement No. 1 to the D&O Coverage Part, **Medical Services** means health care, medical care, or treatment provided to any individual, including, but not limited to:

A.  Medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing or other professional health care;

B.  The use, prescription, furnishing or dispensing of medications, drugs, blood, blood products or medical, surgical, dental or psychiatric supplies, equipment or appliances in connection with such care;

C.  The furnishing of food or beverages in connection with such care;

D.  Counseling or other services in connection with such care; or

E.  The handling of or the performance of post-mortem examinations on human bodies.

29.     Section IV.B.1. of the D&O Coverage Part precludes coverage, with respect

Insuring Agreement C. of the D&O Coverage Part, for **Loss** for any **Claim**:

Contract

Based upon, arising out of or in any way related to liability assumed through, or on account of, any oral or written contract or agreement to which an **Insured** is a party, however this exclusion shall not apply to liability that would have attached in the absence of such contract or agreement.

30.     Section IV.A.4 of the D&O Coverage Part precludes coverage for **Loss** for any

**Claim**:

Bodily Injury or Property Damage

For the physical injury to or destruction of any tangible property, including loss of use of that property and loss of use of that property that is not physically damaged; or for bodily injury, mental anguish, humiliation, emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual.

31.     Section IV.A.3 of the D&O Coverage Part provides that the Policy does not apply

to **Loss** for any **Claim**:

Conduct

Based upon, arising out of or in any way related to:

a.  Any deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**; or

b.  An **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

However, this exclusion shall not apply to **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in any underlying proceeding or action establishes than **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

32.     Separately, Section IX.A. of the D&O Coverage Part, as amended by Endorsement No. 9 to the D&O Coverage Part, provides as follows:

> An **Insured** shall provide the **Insurer** with written notice as soon as practicable after the Chief Executive Officer, Chief Financial Officer, President, Executive Director, In-House General Counsel or any person with the responsibility for the management of insurance claims, or any equivalent position, of an **Insured Entity** becomes aware of a **Claim**, but in no event later than:
>
> 1.     Ninety (90) days after the effective date of expiration or termination; or
>
> 2.     The expiration date of the Extended Reporting Period, if applicable.

## THE UNDERLYING CLAIM

33.     In a January 12, 2024 letter addressed to AGA (the "Santow Demand"), Santow demanded $1.35 million as compensation for abuse of the Decedent's remains.  (A true and correct copy of the Santow Demand is attached as Exhibit B.)

34.     According to the Santow Demand, AGA tortiously interfered with Santow's right to possess his mother's remains, caused emotional distress through negligence, and breached a written contract by failing to treat Decedent's body with dignity, sensitivity, and care.

35.     After first learning of the Santow Demand through a different insurer on or around May 3, 2024, Hanover denied coverage for the Santow Demand in a May 30, 2024 letter to AGA.

36.     On May 16, 2024, Santow filed a lawsuit styled *Santow v. Anatomical Gift Association of Illinois*, No. 2024L005453 (the "Lawsuit"), against AGA and eight medical schools—the Northwestern Feinberg School of Medicine, Midwestern University College of Medicine, Loyola University Chicago Stritch School of Medicine, National University School of Health Sciences, University of Chicago Pritzker School of Medicine, University of Illinois at

Chicago College of Medicine, Rush Medical College, and Southern Illinois University School of Medicine (the "Medical School Defendants")—in the Circuit Court of Cook County, Illinois. (A true and correct copy of the Lawsuit is attached as Exhibit C.)

37.     The Lawsuit asserts substantially similar allegations as the Santow Demand.

38.     The Lawsuit alleges that AGA facilitates the use of human cadavers for use by Medical School Defendants in their teaching of students and advancement of the scientific and medical understanding of the human body. Specifically, the Lawsuit alleges that AGA maintains a morgue facility in Chicago, Illinois, where donated cadavers are maintained and stored until they are used for educational, teaching, or research purposes at a university's facilities. According to the Lawsuit, AGA provides donated remains directly to requesting universities by transporting these remains from an AGA facility to designated Medical School Defendants.

39.     The Lawsuit alleges that, in November 2019, Santow and Decedent entered a contract with AGA which provided that, upon Decedent's death, Decedent's body would be donated to AGA for medical and research purposes (the "Contract").

40.     The Contract provided that AGA would receive, prepare, preserve, and distribute the Decedent's remains.

41.     The Lawsuit alleges that Decedent died on November 20, 2020.

42.     The Lawsuit alleges that, pursuant to the Contract, AGA took possession of Decedent's remains on or around November 21, 2020.

43.     According to AGA, the donation of Decedent's body furthered neurological study by a Medical School Defendant.

44. However, the Lawsuit alleges that, on June 11, 2023, Santow learned that an AGA employee removed Decedent's head from her body and used it to humiliate and intimidate an AGA employee who had reported the misuse and mishandling of donated remains by AGA.

45. According to the Lawsuit, Santow suffered "extreme emotional distress" as a result.

46. Based on these allegations, the Lawsuit asserts counts for: (1) negligence; (2) tortious interference with the right to possess Decedent's remains; and (3) breach of fiduciary duty, *i.e.*, the duty of care.

47. The Lawsuit seeks emotional and punitive damages in an amount to be proven at trial, but exceeding $500,000, plus pre and post judgment interest, attorney fees and costs.

48. Hanover denied coverage for the Lawsuit in a June 20, 2024 letter to AGA.

49. Upon information and belief, a different insurer is defending AGA in the Lawsuit.

## INSURANCE COVERAGE DISPUTE

50. AGA seeks insurance coverage from Hanover under the Policy in connection with the Underlying Claim.

51. Hanover disputes that coverage exists for the Underlying Claim under the Policy.

52. An actual, present, and bona fide controversy exists between Hanover, on the one hand, and AGA, on the other hand, with respect to whether there is insurance coverage for the Underlying Claim under the Policy.

53. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policy.

## COUNT I – DECLARATORY JUDGMENT
### (Complete Professional Services Exclusion)

54.     Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 53 as though set forth fully herein.

55.     Endorsement No. 4 to the D&O Coverage Part (the "Complete Professional Services Exclusion") provides that the Policy does not apply to **Loss** for any **Claim** "[b]ased upon, arising out of or in any way related to the performance, provision or rendering of **Professional Services**."

56.     The Policy defines **Professional Services** to mean any service performed for others whether or not for a fee, consideration or other emolument.

57.     Through the Underlying Claim, Santow alleges that AGA provided services to Santow and Decedent through the Contract, which required Decedent to preserve and distribute Decedent's remains.

58.     Through the Underlying Claim, Santow also alleges that AGA provides services to universities in providing donated human cadavers for educational and research purposes.

59.     Santow's alleged injury arose out of AGA's performance, provision or rendering of services for Santow and Decedent.

60.     Santow's alleged injury also arose out of performance, provision or rendering of services for universities.

61.     The Underlying Claim is thus based upon, arising out of or in any way related to the performance, provision or rendering of **Professional Services**.

62.     Accordingly, pursuant to the Complete Professional Services Exclusion, no coverage is available under the Policy for the Underlying Claim.

## COUNT II – DECLARATORY JUDGMENT
### (Medical Services Exclusion)

63.     Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 62 as though set forth fully herein.

64.     Endorsement No. 1 to the D&O Coverage Part (the "Medical Services Exclusion") provides that the Policy does not apply to **Loss** for any **Claim** based upon, arising out of or in any way related to the actual or alleged rendering or failure to render **Medical Services**.

65.     The Policy defines **Medical Services** to mean health care, medical care, or treatment provided to any individual, including, in relevant part but not limited to:

> E.     The handling of or the performance of post-mortem examinations on human bodies.

66.     Santow's Underlying Claim is predicated on AGA's alleged handling of Decedent's body.

67.     Santow's Underlying Claim is predicated on AGA's taking possession of Decedent's remains for the purpose of conducting post-mortem examination(s).

68.     The Underlying Claim is thus based upon, arising out of or in any way related to the actual or alleged rendering or failure to render **Medical Services**.

69.     Accordingly, pursuant to the Medical Services Exclusion, no coverage is available under the Policy for the Underlying Claim.

## COUNT III – DECLARATORY JUDGMENT
### (Contract Exclusion)

70.     Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 69 as though set forth fully herein.

11

71.     Pursuant to Section IV.B.1. of the D&O Coverage Part, Insuring Agreement C. of the D&O Coverage Part does not apply to **Loss** for any **Claim** "[b]ased upon, arising out of or in any way related to liability assumed through, or on account of, any oral or written contract or agreement to which an **Insured** is a party, however this exclusion shall not apply to liability that would have attached in the absence of such contract or agreement."

72.     Through the Underlying Claim, Santow alleges that Decedent, Santow, and AGA entered the Contract, whereby Decedent's remains would be donated to AGA after Decedent's death.

73.     Through the Underlying Claim, Santow alleges that, following the donation of Decedent's remains to AGA pursuant to the Contract, AGA mishandled and misused Decedent's remains against the terms of the Contract.

74.     Thus, the Underlying Claim is based upon, arising out of or in any way related to liability assumed through, or on account of, any oral or written contract or agreement to which an **Insured** – *i.e.*, AGA – is a party.

75.     The exception to Section IV.B.1. does not apply because AGA would not have been liable in the absence of the Contract.

76.     Accordingly, pursuant to Section IV.B.1. of the D&O Coverage Part, no coverage is available under the Policy for the Underlying Claim.

**COUNT IV – DECLARATORY JUDGMENT**
**(Bodily Injury Exclusion)**

77.     Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 76 as though set forth fully herein.

78.     Section IV.A.4. of the D&O Coverage Part provides in relevant part that the Policy does not apply to **Loss** for any **Claim** for "bodily injury, mental anguish, humiliation,

emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual."

79.     Through the Underlying Claim, Santow alleges that, after an AGA employee removed Decedent's head from her body and used it as a prop and in an effort to humiliate and intimidate an AGA employee, Santow suffered "extreme emotional distress."

80.     As relief, Santow's Lawsuit seeks emotional damages, and attendant punitive damages.

81.     The Underlying Claim is thus a **Claim** for "bodily injury, mental anguish, humiliation, emotional distress, disability, sickness, disease, death, assault or battery sustained by any individual."

82.     Accordingly, pursuant to Section IV.A.4. of the D&O Coverage Part, no coverage is available under the Policy for the Underlying Claim.

### COUNT V – DECLARATORY JUDGMENT
### (Conduct Exclusion)

83.     Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 82 as though set forth fully herein.

84.     Section IV.A.3. of the D&O Coverage Part provides in part that the Policy does not apply to **Loss** for any **Claim** based upon, arising out of or in any way related to:

      a.      Any deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**; or

      b.      An **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;

      However, this exclusion shall not apply to **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in any underlying proceeding or action establishes that an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

85.     Coverage for the Underlying Claim is barred to the extent that Section IV.A.3. of the D&O Coverage Part applies.

**COUNT VI – DECLARATORY JUDGMENT**
**(Late Notice)**

86.     Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 85 as though set forth fully herein.

87.     Section IX.A. of the D&O Coverage Part, as amended by Endorsement No. 9 to the D&O Coverage Part, provides in relevant part that an **Insured** shall provide Hanover with written notice as soon as practicable after the Chief Executive Officer, Chief Financial Officer, President, Executive Director, In-House General Counsel or any person with the responsibility for the management of insurance claim, or any equivalent position, of an **Insured Entity** becomes aware of a **Claim**.

88.     Upon information and belief, AGA received the Santow Demand on or about January 15, 2024.

89.     Hanover was first notified of the Santow Demand on May 3, 2024.

90.     The Policy affords no coverage for the Underlying Claim to the extent that AGA failed to provide written notice to Hanover of the Santow Demand as soon as practicable.

**COUNT VII – DECLARATORY JUDGMENT**
**(Definition of "Loss")**

91.     Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 90 as though set forth fully herein.

92.     Coverage under the Policy is limited in relevant to **Loss**.

93.     **Loss** does not include amounts deemed uninsurable by law, including directly assessed punitive damages.

94. Coverage is not available for any amounts incurred in connection with the Underlying Claim that fall outside the definition of **Loss**, including directly assessed punitive damages.

WHEREFORE, Plaintiff, The Hanover Insurance Company, prays that this Court enter a judgment in its favor and against Defendants, awarding the following relief:

a. A declaration that Hanover has no duty to defend or indemnify AGA, or any other person or entity, in connection with the Underlying Claim under the Policy;

b. For costs of suit incurred herein; and

c. For such other and further relief at law or in equity that the Court deems just and proper.

## **RESERVATION OF RIGHTS**

The Policy contain terms, conditions, and exclusions that may be relevant to the Underlying Claim but that are not currently implicated by this declaratory judgment action. Nothing in this Complaint should be construed as a waiver by Hanover of any coverage defenses at law, in equity, or under the Policy. Hanover continues to reserve all rights with respect to any claim for coverage made under the Policy where appropriate, and waives none.

DATED:  October 29, 2024  THE HANOVER INSURANCE COMPANY

By: /s/ David F. Cutter
David F. Cutter
Milad Emam
Paul E. Sowa
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph.:  312-762-3100
Fax:  312-762-3200
Email: dcutter@batescarey.com
Email: memam@batescarey.com
Email: psowa@batescarey.com

15